**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Regina Rodriguez**

CASE NO.: 1:23-cv-01351-RMR-STV          DATE OF HEARING: May 6, 2025

CASE CAPTION: GRCO LLC v. Granby Ranch Metropolitan District

PARTY OR PARTIES SEEKING SUMMARY JUDGMENT: Plaintiff GRCO LLC

**JOINT CHART OF MATERIAL FACTS**

| GRCO's Motion for Summary Judgment on GRCO's Counts I-VI | | | |
|---|---|---|---|
| **Number** | **Movant's purported undisputed material fact (with citations)** | **Non-movant's response (with citations)** | **Do the parties agree that the purported fact is material?** |
| 1. | Since May 2021, Plaintiff GRCO LLC ("Plaintiff") has owned the real property in the Granby Ranch development in Grand County, Colorado legally described on Exhibit 1 of the Plaintiff's Second Amended Complaint ("Property"), some of which is located within the current boundaries of the Granby Ranch Metropolitan District ("GRMD" or the "District."). <br><br> Glarner Aff., ¶ 4; GRCO Corp. Rep. Depo. Tr., p. 29. | Undisputed. | Yes. |
| 2. | Defendant GRMD is a Metropolitan District organized and existing pursuant to the Colorado Special District Act, C.R.S. § 32-1-101 et seq. GRMD is a quasi-municipal corporation and political subdivision of the State of Colorado. <br><br> Second Amended Complaint ("SAC") ¶ 10 and GRMD's Answer thereto. | Undisputed. | Yes. |

| 3. | GRMD does not own, operate or maintain any infrastructure or improvements within the District.<br><br>GRMD Corp. Rep. Depo. Tr., pp. 20, 29. | Undisputed that GRMD itself does not own, operate, or maintain any infrastructure within the District.<br><br>GRMD 30(b)(6) Dep. at 20-21. | No. |
|---|---|---|---|
| 4. | GRMD does not provide any direct services to the residents of Granby Ranch; its function is to levy taxes and fees to fund the operation of the district, repay its outstanding debt, service the debt, and all of the administrative things that go along with that.<br><br>GRMD Corp. Rep. Depo. Tr., pp. 20, 29-30.<br>Pogue Depo. Tr., pp. 23-24. | Undisputed. | Yes. |
| 5. | Granby Ranch is a master planned development comprised of about 5,000 acres located in Grand County, Colorado.<br><br>2006 Bond Offering Memo (GRMD004951-5293 at 4966). | Undisputed. | Yes. |
| 6. | In 2003, the Town of Granby ("Town") created GRMD (originally named Sol Vista Metropolitan District No. 2) to facilitate development of an approximately 5,000 acre site (referred to as the "Development").<br><br>Service Plan (GRMD000332-446 at 337). | Undisputed that the Town approved the original Service Plan (2003) for Sol Vista Metro District No. 2 (which was GRMD's former name), which provides that "The SolVista Golf & Ski Ranch development consists of approximately 5,000 acres as described on Exhibit A-1" thereto, and that the purpose of the Service Plan was "to establish a public entity that can provide financing, participate in | Yes. |

| | | Intergovernmental Agreements and provide for operations for the essential community-wide infrastructure and public facilities and services that will serve the development." | |
|---|---|---|---|
| 7. | "The SolVista Golf & Ski Ranch development consists of approximately 5,000 acres as described on Exhibit A-1" thereto, and that the purpose of the Service Plan was "to establish a public entity that can provide financing, participate in Intergovernmental Agreements and provide for operations for the essential community-wide infrastructure and public facilities and services that will serve the Development."<br><br>Service Plan (GRMD000332-446 at 337). | Undisputed that the 2003 Service Plan states so. | Yes. |
| 8. | GRMD's Service Plan provided for a dual district structure and stated that Headwaters Metropolitan District ("Headwaters"), described as the "Service District," was organized to "finance, construct, manage and operate public facilities and services throughout the Development" and that GRMD, described as the "Tax District," was organized to "produce property tax and other revenue sufficient to pay the costs of operations and debt service expenses incurred for the public improvements, …"<br><br>Service Plan (GRMD000332-446 at 337, 339). | Undisputed that a "dual-district" structure was implemented wherein Headwaters Metropolitan District was the "service district" and GRMD the "taxing district." Disputed that the cited page supports the purported facts. GRMD 337. | Yes. |
| 9. | GRMD's Service Plan stated that "[i]t is currently anticipated in the Development Plan that at full build out the Development will include approximately 5,000 acres of mixed-use development, including approximately 2,100 single family homes, 2,119 multi-family homes, and approximately 655,000 square feet of non-residential space."<br><br>Service Plan (GRMD000332-446 at 338). | Undisputed. | No. |

| 10. | GRMD's Service Plan stated that "[a]s presently planned, build-out of the Development will proceed in multiple phases over the next 30 years, each of which will require the extension of public improvements and services planned in corresponding construction phases."<br><br>Service Plan (GRMD000332-446 at 340). | Undisputed. | No. |
|---|---|---|---|
| 11. | The Service Plan states that "[t]he estimated costs of the public improvements to be acquired, constructed, installed and completed by the Service District within the Development and those Improvements to be jointly funded with the Town are $35,000,000 (based upon projected available financing as reflected in Exhibit C, plus $1.0 million for transportation, plus the 8% Town allocation and the costs of issuance."<br><br>Service Plan (GRMD000332-446 at 348). | Undisputed. | No. |
| 12. | Exhibit C to the Service Plan is a chart entitled "Engineering Survey of Estimated Costs of Public Improvements" with a column labeled "Metro Capital (2003-2023)" listing the estimated costs of various improvement projects, which estimated costs total $30,982,000 million.<br><br>Service Plan (GRMD000332-446 at 381-82). | Undisputed. | No. |
| 13. | Exhibit D to the Service Plan is a Financing Plan, which states that GRMD will advance as much as $31,900,000 to the Service District to help defray the District's capital improvement costs; the Financing Plan anticipated debt in the total amount of $35,000,000 for the purposes set forth therein; specifically, "sanitary sewer, water system, roads and traffic safety, drainage, and transportation."<br><br>Service Plan (GRMD000332-446 at 351, 384-88). | Undisputed. | No. |
| 14. | To GRMD's knowledge, the Financing Plan included in the Service Plan has never been updated or changed.<br><br> GRMD Corp. Rep. Depo. Tr., p. 38. | Undisputed. | No. |

| 15. | Only a portion of the 5,000 acre "Development" contemplated in the Service Plan has been developed; per GRMD's Manager and Corporate Representative, approximately 340 homes (of the 2100 anticipated in the Service Plan) had been built in Granby Ranch as of September 11, 2024.<br><br>GRMD Corp. Rep. Depo. Tr., p. 41. | Undisputed. | No. |
|---|---|---|---|
| 16. | GRMD's Manager and Corporate Representative  cannot identify the scope or the specific location (other than within the boundaries of the District)  of the specific projects listed in Exhibit C to its Service Plan and does not know whether those specific projects were ever constructed.<br><br>GRMD Corp. Rep Depo. Tr., pp. 39-40. | Disputed. The cited pages do not support the purported fact. The projects are all located within the boundaries of the district at that time. Dep. at 40. There are roads, sewer lines, water lines, and stormwater detention ponds functioning and serving the population of homeowners and residents. *Id*.; *see also* Lorenz expert report; Drekonja Dep. at 35-36. | Yes. |
| 17. | On May 26, 2005, the Boards of Directors of Headwaters and GRMD approved a joint resolution to establish a capital facilities fee with respect to property within the District ("2005 CFF Resolution") in the amount of $6,255 per residential unit or its equivalent (the "CFF") to be paid by the lot owner as a condition of issuance of a building permit by the Town of Granby for the construction of any building on the lot.<br><br>2005 Facilities Fee Resolution (GRMD 000001-7). | Undisputed. | Yes. |
| 18. | The 2005 CFF Resolution states that the fee "will provide a source of funding for the costs incurred by the Districts for the financing, acquisition, construction, installation, maintenance, operation and/or administration of the Improvements, *which are generally attributable to the persons subject to such charges, …."* | Undisputed. | Yes. |

| | | | |
|---|---|---|---|
| | 2005 CFF Resolution (GRMD 000001-7 at 1) (emphasis added). | | |
| 19. | The 2005 Facilities Fee Resolution does not identify how the amount of the fee was calculated, other than stating that: "A Facilities Fee is hereby established to be collected by Headwaters in coordination with Granby Ranch. The Boards of Directors of the Districts find that the Facilities Fee calculation contained herein is fair and equitable, and approximates a pro rata calculation of a portion of the appraised value of the Improvements, which are not otherwise funded by the Districts.<br><br>2005 CFF Resolution (GRMD 000001-7 at 2). | Undisputed. | Yes. |
| 20. | GRMD's Manager and Corporate representative has never seen a copy of the appraisal referenced in the 2005 CFF Resolution. (possibly add board members have not either).<br><br>GRMD Corp. Rep Depo. Tr., p 51. | Undisputed. | No. |
| 21. | The 2005 CFF Resolution does not identify the specific projects included in the referenced "Improvements;" it refers to the Districts' construction completion, maintenance and operation of public infrastructure "in accordance with the Service Plans of the Districts" and the Districts' determination of the need for broad categories of improvements, such as streets and roads, traffic safety and control, drainage, water and sanitary sewer, parks and recreation improvements, and other categories of public improvements.<br><br>2005 CFF Resolution (GRMD 000001-7 at 1). | Undisputed. | No. |
| 22. | In April 2006, the Town, Headwaters and GRMD approved an "Intergovernmental Agreement Concerning the Facilitation of Payment of Capital Facilities Fees" (the "Town IGA").  It provides, in relevant part, "[w]hereas the Districts have requested that  the Town assist them in ensuring that the Capital Facilities Fees are paid to the Districts when due, in accordance with the Original Fee Resolution or any amendment or | Undisputed. | Yes. |

| | | | |
|---|---|---|---|
| | restatement thereof  The Town IGA further provides that "the Town shall not approve the zoning portion of such building permit for any property within the boundaries of the Districts" until the applicant provides proof of payment of the Capital Facilities Fee.<br><br>Town IGA (GRMD000579-585 at 580-81). | | |
| 23. | Paragraph 1.1 of the IGA provides, in relevant part: "During the term of the Agreement, for requests for building permits that are processed by the Town for zoning or building review, the Town shall not approve the zoning portion of such building permit for any property within the boundaries of the Districts until the applicant provides a signed acknowledgment from Granby Ranch and building plans stamped by Granby Ranch indicating the applicant's payment of the required Capital Facilities Fee and stamped building plans, which acknowledgment Granby Ranch agrees to provide to any property owner in exchange for the applicable Capital Facilities Fee."<br><br>Town IGA (GRMD000579-585 at 581). | Undisputed. | Yes. |
| 24. | Pursuant to Paragraph 5.1 of the IGA, "[i]f a party violates or breaches or fails to keep or perform any covenant, agreement, term or condition ..., the nonbreaching party shall be entitled to pursue all remedies ... including the right of specific performance."<br><br>Town IGA (GRMD000579-585 at 582). | Undisputed. | No. |
| 25. | The Town IGA acknowledged GRMD's intent to issue Limited Tax General Obligation Bonds, Series 2006 (the "2006 Bonds") to finance some of the infrastructure serving part of Granby Ranch.<br><br>Town IGA (GRMD000579-585 at 580). | Undisputed. | Yes. |
| 26. | In June 2006, Headwaters and GRMD approved an Amended and Restated Joint Resolution to Establish a Capital Facilities Fee on all property within GRMD's boundaries in the amount of $6,255 per single-family dwelling or its equivalent the ("CFF") to be collected by GRMD and due upon the issuance of a building permit or as otherwise set forth therein ("2006 CFF Resolution"). | Undisputed. | Yes. |

|  |  |  |  |
|---|---|---|---|
|  | 2006 CFF Resolution (GRMD 000008-16 at 9). |  |  |
| 27. | The 2006 CFF Resolution states that the Districts have developed a plan of finance for the provision of "Improvements" within their boundaries, "which plan anticipates the funding of such Improvements through developer contributions and the issuance by Granby Ranch of the Series 2006 Bonds" and that the CFFs "would defray a portion of the costs of the Improvements in the development of Granby Ranch."<br><br>2006 CFF Resolution (at GRMD 000009). | Undisputed that the Resolution provides that in part. | Yes. |
| 28. | The term "Improvements" is not defined other than by reference to the broad categories of authorized services and facilities referenced in the Service Plan.<br><br>2006 CFF Resolution (at GRMD 000008). | Undisputed. | Yes. |
| 29. | The 2006 Facilities Fee Resolution states that the proceeds of the CFF are to be used:<br><br>"solely for the purpose of financing the acquisition, reimbursement, construction, replacement, maintenance and repair of the Improvements, including, but not limited to, paying debt service on, and other costs related to, the Series 2006 Bonds and any obligations refunding such Series 2006 Bonds and reimbursements of amounts advanced by other parties."<br><br>2006 CFF Resolution (GRMD 000008-16 at 9). | Undisputed. | Yes. |
| 30. | Both the 2005 and 2006 CFF Resolutions state that the fees imposed thereunder shall constitute a perpetual lien on and against the affected property.<br><br>2005 CFF Resolution (GRMD 000001-7 at 3); 2006 CFF Resolution (GRMD 000008-16 at 10). | Undisputed. | Yes. |
| 31. | On June 7, 2006, the Districts prepared a Memorandum of Resolution Concerning the Imposition of Capital Facilities Fees ("Memorandum") purportedly reflecting the terms of the 2006 CFF and lien referenced therein, | Undisputed. | Yes. |

| | | | |
|---|---|---|---|
| | which Memorandum was recorded in the Grand County land records on March 5, 2007 with respect to all land within the GRMD's boundaries at the time the 2006 CFF Resolution was approved.<br><br>Memorandum of Resolution Concerning the Imposition of Capital Facilities (GRMD004311-4345). | | |
| 32. | GRMD's Manager and Corporate Representative does not know how the CFF was calculated in 2005 or 2006; nor does he  know what assumptions were made in the calculation, specifically what "Improvements" were then anticipated to be funded and what amount would need to be funded through CFFs as opposed to GRMD's other revenue sources or private funding.<br><br>GRMD Corp. Rep Depo. Tr., pp. 38-39, 52-53, 56-58, 109, 112. | Undisputed. | Yes. |
| 33. | There have not been any amendments or changes to the CFF imposed under the 2006 CFF Resolution since it was approved in 2006.<br><br>GRMD Corp. Rep Depo. Tr., p. 49. | Undisputed. | Yes. |
| 34. | In June of 2006, GRMD issued $14,725,000 of bonds with the stated purpose, as set forth in the 2006 Indenture, of (a) paying the Project Costs, (b) providing capitalized interest for the payment of interest on the Bonds, (c) funding the Reserve Fund, and (d) paying the costs of issuing the Bonds."<br><br>2006 Indenture (GRMD004398-4468 at 4427). | Undisputed. | Yes. |
| 35. | Under the Indenture for the 2006 Bonds, the CFFs collected under the Fee Resolutions were pledged as one source of payment for the bonds, along with GRMD's debt service property tax and other funds identified in the Bond Indenture.<br><br>2006 Trust Indenture (GRMD 004398-4468 at 004419). | Undisputed. | Yes. |
| 36. | The Offering Memorandum for the 2006 Bonds states that portions of Granby Ranch were improved with basic public infrastructure beginning in the 1970's, and that streets, water and sanitary sewer facilities and other necessary infrastructure existed in 2006 to enable access to, and operation of, the Ski | Undisputed. | Yes. |

| | | | |
|---|---|---|---|
| | Areas, Golf Course, Kicking Horse Property, and other portions of the planned residential development.<br><br>2006 Offering Memo (GRMD 4951-5293 at 5034). | | |
| 37. | The Offering Memorandum states that the then-developer, Granby Realty Holdings, Inc. ("GRH") estimated that as of 2005, the cost of installing the remaining public improvements necessary to support the development was $48 million, and that GRH had already spent $2.6 million installing public improvements.<br><br>2006 Offering Memo (at GRMD 005035). | Undisputed. | Yes. |
| 38. | The Offering Memorandum states that of the anticipated $45.4 million remaining public improvement costs, approximately $7.1 million of the bond proceeds (or 16%) would be used for construction of additional projects and remaining projects would be funded by GRH and future lot bulk purchasers.<br><br>2006 Offering Memo (at GRMD 004981-82, 005035). | Undisputed. | Yes. |
| 39. | GRMD's Manager and Corporate Representative cannot identify any **specific** public improvements or infrastructure that was funded with the 2006 Bond proceeds.<br><br>GRMD Corp. Rep Depo. Tr., pp. 83-88, 98. | Disputed. *See* GRMD 4355-4380 (project requisitions and related documents); Pogue Dep. at 42 (funds were also used to reimburse Developer for infrastructure), 65, 67; *see* Drekonja Dep. at 89-90 (payment to Town engineer to review and help with infrastructure), 93-94 (payment for soils testing in the community); HWMDSUBP 3298 (memorializing assignment of contracts for various infrastructure for | Yes |

| | | reimbursement to Developer); HWMDSUBP 5826 (HWMD accounts payable describing infrastructure to be reimbursed by Bond proceeds).<br>The HWMD subpoena documents were produced after the cited deposition. | |
|---|---|---|---|
| 40. | GRMD board members and GRMD's attorney are unable to identify any *specific* public improvements or infrastructure projects, or the extent thereof, that was funded with the 2006 Bond proceeds.<br><br>Pogue Depo. Tr., pp. 61-70.<br>Drekonja Depo. Tr., pp. 89-90, 93-94.<br>Girard Depo. Tr., pp. 60-62.<br>Haberer Depo. Tr., pp. 71-74.<br>Young Depo. Tr., pp. 30-31.<br>Bearden Depo. Tr., p. 42. | Disputed. *See* GRMD 4355-4380 (project requisitions and related documents); Pogue Dep. at 42 (funds were also used to reimburse Developer for infrastructure), 65, 67; *see* Drekonja Dep. at 89-90 (payment to Town engineer to review and help with infrastructure), 93-94 (payment for soils testing in the community); HWMDSUBP 3298 (memorializing assignment of contracts for various infrastructure for reimbursement to Developer); HWMDSUBP 5826 (HWMD accounts payable describing infrastructure to be reimbursed by Bond proceeds). | Yes. |

| | | The HWMD subpoena documents were produced after the cited deposition. | |
|---|---|---|---|
| 41. | GRMD does not dispute that certain roads or infrastructure now serving Granby Ranch were constructed before the 2006 Bonds were issued, but it cannot identify what **specific** infrastructure or improvements existed prior to issuance of the 2006 Bonds.<br><br>GRMD Corp. Rep Depo. Tr., pp. 79-81. | Undisputed that certain portions of roads or infrastructure were constructed or contracted to be constructed before issuance of the 2006 Bonds. Disputed that GRMD cannot identify infrastructure or improvements that existed prior to issuance of the 2006 Bonds. *See, e.g.*, GRMD 4364 (HWMD Schedule of Cost of Roads Conveyed to District that were reimbursed by 2006 Bond proceeds). | Yes. |
| 42. | In addition to funds made available to Headwaters from the bond proceeds, GRH continued to advance sums to Headwaters to cover infrastructure costs in Granby Ranch and Headwaters was obligated to reimburse GRH for those advances.<br><br>HWMD 2007 Audited Financial Report (HWMD-SUBP000742-778 at 752, 756, 764, 769, 777, 748, 750). | Disputed. The purported facts are not evident from the cited documents and also call for legal conclusion. | Yes. |
| 43. | At the December 1, 2006, joint meeting of the Headwaters/GRMD boards, the District accountant presented the anticipated 2006 construction contract expenditures in the November 30, 2006 financial statements and reported that amounts are still subject to adjustment, but based on projections, current construction contracts would exceed bond proceeds and it is anticipated that a developer contribution of $2,350,000 will be necessary to cover the 2006 construction contracts including the change orders. | Undisputed. | Yes. |

| | | | |
|---|---|---|---|
| | GRMD/HWMD Dec. 1, 2006 Minutes (HWMD 0003403-3406 at 3404). | | |
| 44. | At the December 13, 2006, joint meeting of the Headwaters/GRMD boards, it was reported that all bond proceeds would be exhausted in 2006, and all future construction costs will be funded by the Developer.<br><br>GRMD/HWMD Dec. 13, 2006 Minutes (HWMD-SUBP0003407-3417 at 3416). | Undisputed. | Yes. |
| 45. | Headwaters' 2007 Audited Financial Report state that "[t]he majority of the funding for infrastructure and other costs was funded by developer advances, …"<br><br>HWMD 2007 Audited Financial Report (HWMD-SUBP000742-778 at 750). | Undisputed that the document, under "Long-term debts" provides as such, in part. | No. |
| 46. | Headwaters' 2007 Audited Financial Report states that the Developer advanced Headwaters approximately $1 million in 2006 for capital projects and approximately $8.2 for capital projects in 2007, and Headwaters reported a note payable to the Developer of over $11 million at the end of 2007.<br><br>HWMD 2007 Audited Financial Report (HWMD-SUBP000742-778 at 752, 756, 777). | Disputed. None of the cited pages so state. | Yes. |
| 47. | GRMD cannot identify what specific public improvements or infrastructure now serving Granby Ranch were funded with the 2006 Bond proceeds as opposed to funds advanced by the developer or other private funding from developers and homebuilders over the years.<br><br>GRMD Corp. Rep. Depo. Tr., pp. 83-84. | Disputed. *See* GRMD 4355-80 (project requisition and related documents) and HWMDSUBP 2087 (Assignment of ERS construction agreement noting intent for reimbursement to GRH from moneys made available to it from the issuance by GRMD of its 2006 Bonds). | Yes. |
| 48. | The Town of Granby also imposes fees on property owners and provides water and sewer infrastructure to those customers in the South Service Area, which encompasses Granby Ranch. | Undisputed. | Yes. |

| | | | |
|---|---|---|---|
| | Lorenz Depo. Tr. p. 134 (Depo Exhibit 53). | | |
| 49. | On April 21, 2010, GRMD issued $11,119,000 of Subordinate Bonds for the purpose of refunding its obligation to reimburse sums advanced by GRH to Headwaters for the costs of designing, constructing, acquiring, and installing public infrastructure and improvements benefitting the District.  ("2010 Bonds").

GRMD 2009 Financials (GRMD002438-2641 at 2458)
GRMD Resolution Authorizing Issuance of 2010 Bonds (GRMD 6271-329 at 6273)
GRMD Corp. Rep. Depo. Tr., pp. 110-11. | Undisputed that on April 21, 2010, GRMD issued $11,119,000 of subordinate bonds, the proceeds of which were to be used to pay off the capital and service obligation owed to Headwaters Metropolitan District. | No. |
| 50. | Though no cash changed hands, the 2010 Bonds were held by the then developer GRH and in exchange for the debt then owned to GRH.

GRMD Corp. Rep. Depo. Tr., pp. 110, 112-13.
Pogue Depo. Tr., pp. 56-57. | Undisputed. | No. |
| 51. | Prior to issuance of the 2010 Bonds, GRMD's certified public accountant prepared a report relating to Headwaters' infrastructure costs, stating "Developer [GRH] submitted documentation for $8,604,521 in capital developer advances and $1,601,132 in accrued interest on those capital advances for infrastructure installed for the benefit of Granby Ranch Metropolitan District" and listing categories of improvements funded with those advances in 2007, 2008 and 2009, specifically, streets and storm sewer, traffic and safety control, sanitation and water.

Robertson & Marchetti, P.C. Letter report dated April 14, 2010 (GRMD 6437-38). | Undisputed that Kenneth J. Marchetti, CPA (who was "not independent with respect to the Headwaters Metropolitan District or the Granby Ranch Metropolitan District") signed a report titled "Headwaters Metropolitan District Infrastructure Improvements and Granby Ranch Metropolitan District Developer Reimbursement" dated April 14, 2010, that states that the "Developer [GRH] submitted | No. |

| | | | |
|---|---|---|---|
| | | documentation for $8,604,521 in capital developer advances and $1,601,132 in accrued interest on those capital advances for infrastructure installed for the benefit of Granby Ranch Metropolitan District."<br><br>Disputed that the report states the advances were all made in 2007, 2008, and 2009. | |
| 52. | GRMD's Manager and Corporate Representative cannot identify any specific capital improvement projects that were funded by the debt represented by the 2010 Bonds.<br><br>GRMD Corp. Rep. Depo. Tr., pp. 112-13. | Disputed. The cited testimony does not support the purported fact. | No. |
| 53. | GRMD does not know if the capital improvement projects that were funded by the debt represented by the 2010 Bonds were included within the projects that were anticipated to be funded by the 2006 Bond proceeds.<br><br>GRMD Corp. Rep. Depo. Tr., pp. 112-13. | Undisputed. | No. |
| 54. | GRMD never made any payment on the 2010 Bonds, and GRH ultimately agreed to forgive or cancel repayment of those bonds in 2016.<br><br>Drekonja Depo. Tr., pp. 107-108.<br>GRMD Corp. Rep. Depo. Tr., pp. 112-13, 113-114.<br>Pogue Depo. Tr., pp. 56-57. | Undisputed. | No. |

| | | | |
|---|---|---|---|
| 55. | As a result of GRH's forgiveness of that bond debt, GRMD never contributed any funds toward the costs of the infrastructure projects funded by GRH that comprised the 2010 bond debt and that infrastructure was privately funded.<br><br>GRMD Corp. Rep. Depo. Tr., pp. 113-14.<br>Pouge Depo. Tr., p. 57.<br>GRMD HW 2016 minutes (HWMD-SUBPP003979-4012). | Undisputed. | No. |
| 56. | GRMD did not recalculate the amount of the CFF when the 2010 bond debt was forgiven.<br><br>GRMD Corp. Rep Depo. Tr., p. 114. | Undisputed. | No. |
| 57. | In 2018, GRMD issued $11,970,000 of bonds for the purpose of refunding the 2006 Bonds ("2018 Bonds").<br><br>2018 Trust Indenture (GRMD 003479-3545 at 3494, 3508). | Undisputed. | No. |
| 58. | The 2018 Bonds were not issued to fund any new infrastructure or improvements.<br><br>Pogue Depo. Tr., p. 77 | Undisputed. | No. |
| 59. | The 2018 Bonds paid in full, retired, and refunded the entirety of the outstanding indebtedness owed on the 2006 Bonds.<br><br>2018 Bond Indenture (GRMD003479-3545 at 3502). | Undisputed. | No. |
| 60. | The CFFs were not pledged as a source of repayment for the 2018 Bonds pursuant to the Indenture for the 2018 Bonds.<br><br>2018 Bond Indenture (at GRMD 003501-02) (definition of Pledged Revenue)<br>GRMD Corp. Rep. Depo. Tr., p. 66<br>Pogue Depo. Tr., p. 77. | Undisputed that at the time the 2006 debt was refinanced via the 2018 Bond, the CFFs were not "pledged" in the bond documents to repayment of the 2018 Bond debt but they were done so retroactively to May of 2018. Wolfersberger Dep. at 66-67. | No. |

| 61. | The 2006, 2010 and 2018 bond issuances are the only bonds that GRMD issued, and all of GRMD's bonding authority expired in November of 2024.<br><br>GRMD 2021 Annual Financial Statements (GRMD 2788-2818 at 2897)<br>GRMD Corp. Rep. Depo. Tr., p, 29 | Undisputed. | No. |
|---|---|---|---|
| 62. | The 2018 Bonds had different rates and terms than the 2006 Bonds.<br><br>GRMD Corp. Rep. Depo. Tr., p. 115. | Undisputed. | No. |
| 63. | Payment of the CFF is a condition to issuance of building permits for all lots on property within GRMD's boundaries when the 2006 CFF Resolution was approved.<br><br>GRMD Corp. Rep. Depo. Tr. 57-58, 137-39. | Undisputed that the Town requires payment of the CFF before issuing building permits. Undisputed that the CFFs apply to all properties that were within GRMD's boundaries when it was enacted. | Yes. |
| 64. | Logistically, the Homeowners' Association, CRC, collects the CFFs and remits payment to GRMD.<br><br>GRMD Corp. Rep. Depo. Tr., pp. 57-58. | Undisputed that CRC collects it and remits it to GRMD. | Yes. |
| 65. | The CFFs were never directly used to pay for infrastructure; the only way GRMD funded any infrastructure was through the 2006 Bond proceeds.<br><br>GRMD Corp. Rep Depo. Tr., p. 85. | Undisputed. | Yes. |
| 66. | Other than through the 2006 Bond proceeds, GRMD did not contribute in any way to any other improvements or infrastructure costs.<br><br>Pouge Depo. Tr., p. 57. | Undisputed. | Yes. |
| 67. | Through 2018, GRMD deposited all CFFs collected into its Debt Service Fund to be used for debt service on the 2006 Bonds as required by the Bond Indenture.<br><br>GRMD Corp. Rep. Depo. Tr., pp. 60-61. | Undisputed. | No. |

| 68. | From 2019 through November of 10, 2023, GRMD deposited all CFFs collected into its General Fund.<br><br>GRMD Corp. Rep. Depo. Tr., pp. 60-61. | Undisputed. | No. |
|---|---|---|---|
| 69. | GRMD's general funds are available to pay GRMD's general administrative expenses, including accountant, legal fees relating to the litigation regarding the lease purchase agreement amenities, and debt repayment.<br><br>GRMD Corp. Rep. Depo. Tr., pp. 61-64. | Undisputed that for a number of years after 2018 GRMD deposited all CFFs collected into its General Fund and general administrative expenses may be paid from the General Fund. Disputed to the extent the purported fact insinuates that the CFFs were in fact used to pay for general administrative expenses. Wolfersberger Dep. 151-52; Pogue Dep. 80. | No. |
| 70. | After GRCO filed its original complaint in this action, GRMD passed a resolution on or about November 10, 2023, purporting to pledge all CFFs collected in and subsequent to May of 2018 to repayment of the District's 2018 Bonds and any refundings thereof.<br><br>GRMD Resolution dated November 10, 2023 (GRMD 6189-90).<br>GRMD Corp. Rep Depo. Tr., pp. 65. | Undisputed that GRMD passed a Resolution Regarding the Pledge of Capital Facility Fees Collected and Yet to Be Collected Subsequent to May 2018 (dated Nov. 10, 2023) pledging CFFs to repayment of the District's 2018 Bonds and any refundings thereof. GRMD 6189-90. | No. |

| 71. | GRMD's corporate representative testified that in addition to the reasons set forth in the recitals, the November 10, 2023 resolution passed "in response to the lawsuit in some respect."<br><br>GRMD Corp. Rep. Depo. Tr., p. 65. | Disputed. The cited testimony does not unequivocally support the statement. The deponent referred to the recitals in the resolution. | No. |
| 72. | Since November 2021, GRCO has applied for and obtained 28 building permits for the lots located at the following addresses: (1) 925 Pawnee Lane; (2) 102 Base Camp Circle; (3) 104 Base Camp Circle; (4) 106 Base Camp Circle; (5) 108 Base Camp Circle; (6) 110 Base Camp Circle; (7) 112 Base Camp Circle; (8) 114 Base Camp Circle; (9) 116 Base Camp Circle; (10) 510 Fall Line Road; (11) 570 Fall Line Road; (12) 630 Fall Line Road; (13) 690 Fall Line Road; (14) 750 Fall Line Road; (15) 810 Fall Line Road; (16) 665 Fall Line Road; (17) 575 Fall Line Road; (18) 785 Kiowa Lane; (19) 1275 Lone Eagle Drive; (20) 1005 Pawnee Lane, (21) 870 Expedition Lane; (22) 221 Night Hawk Court; (23) 251 Night Hawk Court; (24) 810 Fall Line Road; (25) 90 Cumulus; (26) 420 Shoshoni; (27) 294 Night Hawk; and (28) 385 Lone Eagle (the "GRCO Permits").<br><br>Glarner Aff., ¶ 5. | Undisputed that the Affidavit so states. | Yes. |
| 73. | GRCO paid a CFF to GRMD as a requirement for issuance of the GRCO Permits and development of those lots for which those permits were issued; GRMD either paid the CFF directly or reimbursed its contractors for payment of those fees.<br><br>Glarner Aff., ¶ 6. | Undisputed that the Affidavit so states. | Yes. |
| 74. | To date, GRCO has paid or reimbursed a total of 28 CFFs to obtain the GRCO Permits.<br><br>Glarner Aff., ¶ 11. | Undisputed that the Affidavit so states. | Yes. |
| 75. | GRCO has developed two new subdivisions in Granby Ranch—Tall Timbers (lots on Fall Line and Expedition) in 2022 and Night Hawk in 2023. | Undisputed. | Yes. |

| | | | |
|---|---|---|---|
| | GRCO Corporate Rep Depo. Tr., pp. 53-54. | | |
| 76. | Many of the lots for which GRCO paid CFFs between 2021 and 2023 are for building permits in Tall Timbers and Night Hawk, specifically: 510 Fall Line Road, 570 Fall Line Road, 575 Fall Line Road, 630 Fall Line Road, 665 Fall Line Road, 690 Fall Line Road, 750 Fall Line Road, 810 Fall Line Road, 520 Expedition Lane, 580 Expedition Lane, 640 Expedition Lane, 700 Expedition Lane, 760 Expedition Lane, 820 Expedition Lane, 870  Expedition Lane, 221 Night Hawk Court, 238 Night Hawk Court, 251 Night Hawk Court, 262 Night Hawk Court, 281 Night Hawk Court, and 286 Night Hawk Court  ("Newly Developed Lots").<br><br>Glarner Aff., ¶ 12. | Undisputed that the Affidavit so states. | Yes. |
| 77. | GRMD is not funding any new infrastructure required for any of the new development.<br><br>GRMD Corp. Rep. Depo. Tr., p. 120. | Undisputed with objection that "new infrastructure" and "new development" are vague and ambiguous. | Yes. |
| 78. | GRCO funded all new infrastructure and improvements serving the Newly Developed Lots, including roads, water, sewer, infrastructure, fiber, telephone, gas, electric and stormwater, totaling approximately, $6.3 million.<br><br>GRCO Corp. Rep. Depo. Tr., pp. 62-65.<br>GRCO Infrastructure Cost Spreadsheet GRCO 003735 | Undisputed. | Yes. |
| 79. | In 2022 and 2023, at its own cost, GRCO also repaired, replaced or rebuilt roads in the Granby Ranch development, including Upper Ranch View, Cumulus, Lake Drive, that were in a complete state of disrepair, falling apart and almost undriveable in some areas.<br><br>GRCO Corp. Rep. Depo. Tr., pp. 46-50, 111.<br>Map Compilation (GRCO 004400-17). | Disputed. The cited testimony does not establish that GRCO "replaced or rebuilt" the referenced roads. | Yes. |
| 80. | According to GRMD's President, GRCO's roadwork in Granby Ranch was "complete rehabilitation work" and the roads had to be "completely reconstructed" because they weren't built properly the first time. | Undisputed. | Yes. |

| | | | |
|---|---|---|---|
| | Girard Depo. Tr., pp. 18-20. | | |
| 81. | GRCO also replaced, at its own cost, sewer and water infrastructure in the roads that it rebuilt.<br><br>GRCO Corp. Rep. Depo. Tr., p. 50. | Disputed. Cited testimony does not support the purported fact. | Yes. |
| 82. | According to GRMD's expert, the useful life of road pavement is 15-25 years; therefore, any roads constructed in 2006 or 2007 could be at the end of its useful life or substantially depreciated.<br><br>Lorenz Depo Tr., p. 157. | Undisputed that useful life of only the road pavement ranges from 15 to 25 years, but that the easement, right-of-way subgrade has much longer life. Lorenz Dep. at 157. | Yes. |
| 83. | GRMD's expert agreed that if GRMD was going to reevaluate its capital facility fee at this time, it should take into account the deprecation to the improvements constructed with the bond proceeds.<br><br>Lorenz Depo. Tr., p. 158. | Undisputed. | No. |
| 84. | GRMD cannot identify any specific infrastructure projects funded with the 2006 Bond proceeds that currently serve the lots developed by GRCO.<br><br>GRMD Corp. Rep. Depo. Tr., p. 86;<br>Girard Depo. Tr., pp. 60-61, 69. | Disputed. *See* GRMD 4355-4380 (project requisitions and related documents); Pogue Dep. at 42 (funds were also used to reimburse Developer for infrastructure), 65, 67; *see* Drekonja Dep. at 89-90 (payment to Town engineer to review and help with infrastructure), 93-94 (payment for soils testing in the community); HWMDSUBP 3298 (memorializing assignment of contracts for various | Yes. |

| | | | |
|---|---|---|---|
| | | infrastructure for reimbursement to Developer); HWMDSUBP 5826 (HWMD accounts payable describing infrastructure to be reimbursed by Bond proceeds). GRMD reserves the right to identify additional documents from the HWMD subpoena documents. | |
| 85. | GRMD cannot identify whether any of GRCO's new lots benefit from any specific infrastructure that was developed with the 2006 Bond proceeds.<br><br>GRMD Corp. Rep. Depo. Tr., pp. 119-20.<br>Girard Depo. Tr., pp. 68-69. | Disputed. *See* GRMD 4355-4380 (project requisitions and related documents); Pogue Dep. at 42 (funds were also used to reimburse Developer for infrastructure), 65, 67; *see* Drekonja Dep. at 89-90 (payment to Town engineer to review and help with infrastructure), 93-94 (payment for soils testing in the community); HWMDSUBP 3298 (memorializing assignment of contracts for various infrastructure for reimbursement to Developer); HWMDSUBP 5826 (HWMD accounts payable describing infrastructure to be | Yes. |

| | | reimbursed by Bond proceeds). GRMD reserves the right to identify additional documents from the HWMD subpoena documents. | |
|---|---|---|---|
| 86. | Of the specific infrastructure existing at the time GRCO purchased its property in Granby Ranch, GRMD does not know what specific projects were funded by the bonds, what was funded privately by the developer, or what was funded privately by homebuilders.<br><br>Pouge Dep. Tr.,p. 90.<br>GRMD Corp. Rep. Dep. Tr., pp. 40-41. | Disputed. *See* GRMD 4355-4380 (project requisitions and related documents); Pogue Dep. at 42 (funds were also used to reimburse Developer for infrastructure), 65, 67; *see* Drekonja Dep. at 89-90 (payment to Town engineer to review and help with infrastructure), 93-94 (payment for soils testing in the community); HWMDSUBP 3298 (memorializing assignment of contracts for various infrastructure for reimbursement to Developer); HWMDSUBP 5826 (HWMD accounts payable describing infrastructure to be reimbursed by Bond proceeds).GRMD reserves the right to identify additional documents from the HWMD subpoena documents. | Yes. |

| 87. | GRMD has not attempted to undertake an individualized assessment of the benefit or utility of improvements funded with the 2006 Bonds for any of the new lots paying the CFF.

Pogue Depo. Tr., pp. 103-105. | Undisputed. | No. |
|---|---|---|---|
| 88. | GRMD has not attempted to undertake an individualized assessment of the impact of GRCO's new development on existing infrastructure.

Pogue Depo. Tr., pp. 103-105. | Undisputed. | No. |
| 89. | To the knowledge of GRMD's Manager and Corporate Representative, GRMD has not ever discussed updating the CFF since it was imposed in 2006.

GRMD Corp. Rep Depo. Tr., pp. 49, 59. | Undisputed. | No. |
| 90. | GRMD's President testified that GRMD has not attempted to determine the current value of the infrastructure funded with the 2006 Bond proceeds.

Girard Depo. Tr., p. 41. | Undisputed. | No. |
| 91. | GRMD's Manager and Corporate Representative agrees that "GRMD is continuing to charge new property owners capital facilities fees without being able to assert what, if any, improvements funded by GRMD are benefitting those new property owners."

GRMD Corp. Rep Depo. Tr., p. 86. | Undisputed that the deponent agreed to the question asked. | No. |
| 92. | During GRMD's Manager and Corporate Representative's deposition, he was asked:

"[D]o you agree that when this fee was imposed, the objective, as set forth in the -- in the resolution was to make it a fair and equitable fee, because everybody was paying a pro rata share of the cost of the improvements that were not otherwise funded, so, in other words, the cost of the improvements that were to be funded by the fee? But now, in 2024, we have no idea if 870 Expedition is paying a pro rata share of any costs of an improvements that were funded in 2006?" | Undisputed. | No. |

| | | | |
|---|---|---|---|
| | He testified:<br>"No. We just know that they're paying the same fee as all other homes in the district that are paying that $6,255 fee."<br>GRMD Corp. Rep Depo. Tr., pp. 133-34. | | |
| 93. | GRMD's expert admitted that with the information available to him, he could not determine whether the $6,522 fee is an accurate and proportionate fee on the property owners who are paying it now.<br><br>Lorenz Depo. Tr., pp. 160-61. | Disputed. Mr. Lorenz testified there was a lack of information available to him and given that, he could not answer the hypothetical posed by counsel. | No. |
| 94. | GRMD's expert admitted that with the information available to him, and without knowing the costs of the improvements that were funded with the GRMD bonds and CFFs, there is no way to determine whether the amount of the fee is reasonable or complies with industry standards.<br><br>Lorenz Depo. Tr., p. 161. | Disputed. Mr. Lorenz did not agree that there was no way to make that determination; he testified there was a lack of information available to him to determine whether the amount of the fee is reasonable or complies with industry standards. | No. |
| 95. | The 2006 Bond Offering Memo dated June of 2006 states that GRMD then-contained approximately 972 acres.<br><br>2006 Offering Memo (at GRMD 004966) | Undisputed that the document states, "Of the approximately 5,000 acres within the Development, approximately 972 acres, or 19%, is within the District." | No. |
| 96. | Through a series of statutory exclusions, GRMD's boundaries were reduced thereafter to the current size of 232.2 acres.<br><br>https:// www.granbyranch.org/view/general-information. | Undisputed that the website provides that the "District's service area covers approximately 232 acres of residential land…." | Yes. |
| 97. | GRMD required GRCO to pay CFFs for development of lots that had been excluded from GRMD's boundaries, including 238 Night Hawk Court, 262 | Undisputed that the Affidavit so states. | Yes. |

|  |  |  |  |
|---|---|---|---|
|  | Night Hawk Court, 281 Night Hawk Court, and 286 Night Hawk Court (collectively "Non-GRMD Lots").<br><br>Glarner Aff., ¶ 13. |  |  |
| 98. | The Non-GRMD Lots were excluded by an Exclusion Order entered in the District Court of Grand County, Colorado dated April 26, 2010.<br><br>2010 Exclusion Order (GRCO 004367-99)<br>Glarner Aff., ¶ 14. | Undisputed that the Affidavit and Order so state. | Yes. |
| 99. | The Exclusion Order states that the excluded Property "shall not be liable for . . . any indebtedness issued after the effective date of the Court's order for exclusion."<br><br>2010 Exclusion Order (GRCO 004367-99). | Undisputed that the Order so states. | Yes. |
| 100. | GRMD asserts that payment of the Capital Facilities Fee is required for properties excluded from GRMD's boundaries.<br><br>GRMD Corp. Rep Depo. Tr., pp. 137-39.<br>GRMD Interrogatory Response No. 11. | Not a proper statement of fact. | Yes. |
| 101. | GRCO owns significant undeveloped land throughout Granby Ranch that it intends to develop.<br><br>GRCO Corp. Rep Depo. Tr., pp. 95-96. | Undisputed. | No. |
| 102. | GRMD intends to continue imposing the CFFs as a condition for obtaining a building permit for all lots it contends are subject to the fee, which includes existing or future lots on property within GRMD's boundaries or excluded from GRMD's boundaries.<br><br>GRMD Corp. Rep Depo. Tr., pp. 59, 103, 137-38. | Undisputed that GRMD intends to continue imposing CFFs on all lots subject to the fee. | Yes. |

Dated this 1st day of May 2025.

Respectfully submitted,

*/s/ JoAnn T. Sandifer*

JoAnn T. Sandifer
Denyse L. Jones
HUSCH BLACKWELL LLP
8001 Forsyth Blvd., Suite 1500
St. Louis, MO 63105
Tel: 314-480-1833
Fax: 314-480-1505
JoAnn.Sandifer@huschblackwell.com
Denyse.Jones@huschblackwell.com

***Attorneys for Plaintiff GRCO LLC***

## CERTIFICATE OF SERVICE

I hereby certify that on May 1, 2025, the foregoing **JOINT CHART OF MATERIAL FACTS** was electronically filed with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

William T. O'Connell, III
Saugat K. Thapa
1700 Broadway, Suite 900
Denver, CO 80290
woconnell@thompsoncoe.com
sthapa@thompsoncoe.com
*Attorneys for Defendant*

I further certify that on May 1, 2025, the foregoing **JOINT CHART OF MATERIAL FACTS** was emailed to the chambers of Judge Rodriguez (Rodriguez_Chambers@cod.uscourts.gov) and Judge Varholak (Varholak_Chambers@cod.uscourts.gov), and counsel for Defendant (woconnell@thompsoncoe.com and sthapa@thompsoncoe.com).

*/s/  JoAnn T. Sandifer*